

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CHARLES ANTHONY NEALY, § | |
| PETITIONER, § | |
| § | |
| V. § | |
| § | No. 3:01-CV-2274-P |
| DOUGLAS DRETKE, Director, § | |
| Texas Department of Criminal Justice, § | |
| Correctional Institutions Division, § | |
| RESPONDENT. § | |
| § | |

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR WRIT OF HABEAS CORPUS

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the United States District Court for the Northern District of Texas, this case has been referred to the United States Magistrate Judge. The findings, conclusions and recommendation of the Magistrate Judge are as follows:

### I.
### NATURE OF THE CASE

A state prison inmate has filed a petition for writ of habeas corpus pursuant to Title 28, United States Code, Section 2254.

### II.
### PARTIES

Petitioner, Charles Anthony Nealy, is an inmate in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID). Respondent, Douglas Dretke, is the Director of TDCJ-CID.

## III.
## PROCEDURAL HISTORY

A jury convicted Petitioner of capital murder, and his punishment was assessed at death by lethal injection. *State v. Nealy*, No. F97-52818-WH (Crim. Dist. Ct., Dallas County, Tex. Sep. 2, 1998). The case was appealed to the Texas Court of Criminal Appeals, which affirmed the conviction and death sentence. *Nealy v. State*, No. 73,267 (Tex. Crim. App. 2000)(unpublished). Petitioner filed a petition for writ of certiorari to the Supreme Court, which was denied on February 20, 2001. *Nealy v. Texas*, 531 U.S. 1160, 121 S.Ct. 1114, 148 L.Ed.2d 983. During the pendency of his direct appeal, Petitioner filed a state application for writ of habeas corpus on July 7, 2000. (St. Hab. T. at 3.) The trial court entered findings of fact and conclusions of law and recommended that relief be denied. *Ex parte Nealy*, No. F97-52818-WH (Crim. Dist. Ct., Dallas County, Tex. Aug. 30, 2001); St. Hab. T. at 256.) The Court of Criminal Appeals adopted those findings of fact and conclusions of law and denied relief in a written order on October 24, 2001. *Ex parte Nealy*, No. 50,361-01 (Tex. Crim. App.).

Petitioner filed his federal petition for writ of habeas corpus on October 21, 2002. Respondent filed an answer with brief in support on February 3, 2003, and furnished the state court records.

## IV.
## EXHAUSTION

In his answer to the original petition, Respondent does not state whether the claims raised in the petition are exhausted. Accordingly, he does not request that any of those claims be dismissed or denied on exhaustion grounds. Further, this Court's own review of the state court records indicates that Petitioner presented all of these claims to the state courts, both in his direct appeal and

in his post-conviction application for writ of habeas corpus.[1] Therefore, these claims have all been exhausted.

# V.
# ISSUES

In three claims for relief, Petitioner complains (1) that there is insufficient evidence to support Petitioner's conviction for capital murder (Pet. at 12-18), (2) that the trial court failed to inform the jury of parole eligibility (Pet. at 19-34), and (3) that there is insufficient evidence to support the special issue verdict on future dangerousness. (Pet. at 35-37.) Petitioner also contends that he is entitled to an evidentiary hearing. (Pet. at 38.) For the reasons set out below, these claims should be denied.

# VI.
# PRELIMINARY ISSUES.

## A. *Non-Retroactivity.*

Respondent asserts that Petitioner's second claim is barred under the federal non-retroactivity doctrine announced in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). "A threshold issue in every case is . . . whether the court is obligated to apply the *Teague* rule to the defendant's claim." *See Caspari v. Bohlen*, 510 U.S. 383, 389, 114 S.Ct. 948, 953, 127

---

[1] Petitioner presented his first claim (insufficient evidence of guilt) as his second point of error in his direct appeal (App. Brief at 33-37; *Nealy*, No. 73,267 at 2), and as his sixteenth claim for relief in his post-conviction application for a writ of habeas corpus. (S. Hab. Tr. at 286-87.) Petitioner presented his second claim (parole eligibility) as his fifth through seventh points of error in his direct appeal (App. Brief at 53-82; *Nealy*, No. 73,267 at 14-15) and in his second through ninth claims for relief in his post-conviction application for a writ of habeas corpus. (S. Hab. Tr. at 24-43, 263-70.) Petitioner presented his third claim (insufficient evidence of future dangerousness) as his fourth point of error in his direct appeal (App. Brief at 41-53; *Nealy*, No. 73,267 at 7-9) and in his twelfth claim for relief in his post-conviction application for a writ of habeas corpus. (S. Hab. Tr. at 57-72, 275-78.)

L.Ed.2d 236 (1994). Therefore, this Court will address this issue before considering the merits of any claim.

> This Circuit has applied a three-step test to determine whether a claim is *Teague*-barred:
>
> (1) we determine when [Petitioner's] conviction and sentence became final, (2) we "survey the legal landscape as it then existed to determine whether a state court considering [Petitioner]'s claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution[,]" and (3) if [Petitioner] seeks the benefit of a new rule, we must decide whether the rule falls within one of the narrow exceptions to the non-retroactivity principle.

*Burdine v. Johnson*, 262 F.3d 336, 341 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 2347 (2002)(quoting *Caspari*, 510 U.S. at 390, 114 S.Ct. at 953). The Supreme Court has recognized two exceptions to this principle. The first is for new rules that place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe. *See Teague*, 489 U.S. at 307, 109 S.Ct. at 1073; *Caspari*, 510 U.S. at 396, 114 S.Ct. at 956. The second is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding. *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 1264, 108 L. Ed.2d 415 (1990); *Caspari*, 510 U.S. at 396, 114 S.Ct. at 956. The Fifth Circuit Court of Appeals has "held that unless the Supreme Court has clearly established that the new rule falls within one of the exceptions to the non-retroactivity principle of *Teague*, . . . that new rule could not be considered with regard to petitions governed by the AEDPA." *Cockerham v. Cain*, 283 F.3d 657, 660 (5th Cir. 2002)(citations omitted).

In his second claim, petitioner complains that his rights to due process, equal protection, effective assistance of counsel, and to be free from cruel and unusual punishment were violated when he was not permitted to inform the jury of the state law regarding parole eligibility either at

4

voir dire, through presentation of the evidence, or in an instruction to the jury. Respondent contends that this claim relies upon an extension of *Simmons v. South Carolina*, 512 U.S. 154, 168-69, 114 S.Ct. 2187, 2196 (1994), which would constitute a new rule of law violating *Teague*. (Ans. at 12, 13.) This court agrees. The Fifth Circuit Court of Appeals has determined that such an extension violates the non-retroactivity doctrine of *Teague*. *See Woods v. Cockrell*, 307 F.3d 353, 361-62 (5th Cir. 2002). Petitioner creatively asserts this claim in different ways, as violations of various different constitutional provisions, any of which could ultimately form the basis for such a new rule. Unfortunately, it makes no difference to this analysis. Any extension of this rule would be a new rule under *Teague*, which bars relief in federal habeas corpus proceedings. Therefore, petitioner's second claim should be denied as barred.

## VII.
## STANDARD OF REVIEW.

The standard of review in federal habeas proceedings is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), which provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in a State court proceeding.

Since the petition in this case was filed after April 24, 1996, the above-cited provision of the AEDPA applies to those claims which were adjudicated on the merits. *Lindh v. Murphy*, 521 U.S. 320, 326-27, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997). "Resolution on the merits" in the habeas corpus context is a term of art that refers to the state court's disposition of the case on substantive rather than procedural grounds. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997).

Section 2254(d)(1) concerns pure questions of law as well as mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885, 122 S.Ct. 194, 151 L.Ed.2d 136 (2001). Under the "contrary to" clause, a federal habeas court may grant the writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or if the state court decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-3, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). With respect to the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court identifies the correct governing legal principle from the United States Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. *Id.* Under *Williams*, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal precedent from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*

Section 2254(d)(2) concerns questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir. 2000). The resolution of a factual issue by a state court is presumptively correct and will not be disturbed unless the prisoner rebuts the presumption by clear and convincing evidence. *See, id.*; 28 U.S.C. § 2254(e)(1). Under § 2254(d)(2), a state court's ultimate decision based upon those

6

factual determinations "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003).

## VIII.
## FACTUAL BACKGROUND.

Petitioner was convicted of the capital murder of Jiten Bhakta during a robbery of the Expressway Mart in Dallas. The evidence at trial revealed that on the evening of August 20, 1997, while Nealy drove by the Expressway Mart in south Dallas on Central Expressway, he told his nephew, Memphis Nealy, that he was going to "come back and get" the people at the Expressway Mart. (30 RR at 13.) This was because they would not sell him certain cigars called "Blackie Mounds." (30 RR at 133-34.) That same night, Petitioner drove back to the Expressway Mart in his blue Mercury Sable with Reginald Mitchell and another nephew, Claude Nealy. (30 RR at 65, 127-28.) After Mitchell paid for the gas they put into the vehicle, Petitioner and Claude Nealy entered the store with weapons. (30 RR at 131.) Petitioner wore a dark hat and carried a shotgun, while Claude Nealy wore a light hat and carried a handgun.[2] (30 RR at 24-25, 86, 131.) The surviving store employee, Satishbhi "Sam" Bhakta, testified that Petitioner and the other robber ordered the store employees to lay down on the floor or they would be shot. (30 RR at 33-34.) Bhakta saw Petitioner go into the officer where Bhakta's brother worked, heard his brother yell and then heard shotgun fire. (30 RR at 34.) Bhakta then heard the pistol fire at close range into the head of the other store employee laying by his side. (30 RR at 34-36.) Petitioner then emerged from the office with the briefcase containing important store papers along with approximately $4,000.00. (30 RR at 36-37,

---

[2] During Bhakti's testimony, he expressed confusion about the colors of the hats but eventually affirmed that the person carrying the shotgun wore the dark hat. (30 RR at 86.)

80-81.) Petitioner then stated "I got the man in the office," to which Claude Nealy replied "I got the one over here too." (30 RR at 37-38, 44, 79.) Then, Bhakta was ordered to open the cash register and Petitioner took out all of the money and put it in his pocket. (30 RR at 38, 44.) After that, Petitioner and Claude Nealy briefly browsed the store for wine and beer before leaving. (30 RR at 38-39, 44-46.) These events were recorded on the store's video camera and shown to the jury. (30 RR at 46-58.) Bhakta's brother, Jiten Bhakta, was found dead in his office from a shotgun wound to his chest that "pulpified" his heart, causing his death. (30 RR at 43, 58-59, 61, 97-99). The other store employee, Vijay Patel, also died of his wounds a couple of days later. (30 RR at 31, 64, 71, 107-108.) After the robbery and murders, Petitioner said "this is the way the Nealy's do it." (30 RR at 132-33.) *See Nealy v. State*, No. 73,267, slip. op. at 2-4 (Tex. Crim. App. Sep. 13, 2000)(unpublished).

## IX.
## EXAMINATION OF THE ISSUES.

### A. Insufficient Evidence of Guilt.

In his first claim for relief, Petitioner contends that the evidence is insufficient to sustain a conviction. For the reasons set forth below, this claim should be denied.

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). In *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979), the Supreme Court held that the proper inquiry on review of the sufficiency of evidence to support a criminal conviction was whether the record evidence could reasonable support a finding of guilt beyond a reasonable doubt.

> But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Woodby v. INS*, 385 U.S., at 282, 87 S.Ct., at 486 (emphasis added). Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.*, 443 U.S. at 318-19 (Emphasis in original).

> In applying this standard, the Texas Court of Criminal Appeals observed,
>
> Nealy argues that the State's eyewitnesses gave conflicting testimony and that the surveillance video was of insufficient quality to discern the perpetrator's facial features. He contends, therefore, that the evidence does not preclude the possibility that someone other than Nealy, such as Claude, shot the deceased.
>
> In evaluating the legal sufficiency of the evidence, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Although our analysis considers all evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the jury.
>
> We hold that the evidence at Nealy's trial satisfies the *Jackson* standard. Mitchell, who was riding in the car with Nealy and Claude, saw Nealy wearing a dark hat and carrying a shotgun. The video shows a man wearing a dark hat and carrying a shotgun. The eyewitness to the offense identified Nealy as the man with the shotgun. Memphis identified Nealy from the video as the man with the shotgun. Viewing the evidence in the light most favorable to the verdict, we hold that the jury could have found beyond a reasonable doubt that Nealy, as opposed to Claude, killed Jiten Bhakta.

(Footnotes omitted) *Nealy*, No. 73,267, slip. op. at 4-5. The Court of Criminal Appeal utilized the correct standard of review, and Petitioner has not shown that any factual determinations were incorrect by clear and convincing evidence, or that its ultimate resolution of this claim was unreasonable.

In fact, the record before this Court supports the conclusion of the state court. Petitioner attacks the evidence identifying him as the one carrying the shotgun and with it caused the death of Jiten Bhakta. Three witnesses identified Petitioner as the one carrying the shotgun into the store:

9

Petitioner's nephew Memphis Nealy (30 RR at 12, 17, 24); store employee Satishbhi "Sam" Bhakta (30 RR at 31, 51-52, 87-88, 91); and coactor to the offense Reginald Mitchell (30 RR at 131, 138). Bhakta is the eyewitness who testified that he saw the person with the shotgun go into the office where the victim (his brother) was later found, he heard the victim yell, followed by a shotgun blast. (30 RR at 34.) Bhakta saw the person carrying the shotgun come out of the office with the victim's briefcase of money and state "I got the man in the office." (30 RR at 36-37, 44, 79.) Bhatka personally identified this same man in the courtroom as Petitioner. (30 RR at 87, 90-91). This was recorded on the store's security videotape. (30 RR at 46-58.) A rational trier of fact would reasonably conclude from the evidence presented at trial that Petitioner was the person that caused the death of the victim.

In contrast, the record does not support critical allegations of the petition. Petitioner claims that Bhatka could only identify the shotgun assailant by clothing. (Pet. at 16.) However, Bhatka made a personal in-court identification of Petitioner as the shotgun assailant. (30 RR at 87, 90-91). Petitioner claims that Memphis Nealy could not identify anyone when he first saw the tape on television, and that his identification "improved" after the police told him that Petitioner was on the tape. (Pet. at 17). Although the Texas Court of Criminal Appeals appeared to agree with Petitioner on this point, the record produced before this court does not clearly support this allegation. Memphis Nealy testified that he did not see the store's video on the news, but only a clip of the news coverage showing the store and the police out there.[3] (30 RR at 22-23). Petitioner also claims that Mitchell,

---

[3] Memphis Nealy's cross examination included the following exchange:

Q. The point is that you saw the video on the news, is that correct?

A. No, I saw the video down—when they came and picked us up when I was arrested.

who knew all of the parties, admitted that anyone who did not know Petitioner could not identify him from the tape. (Pet. at 17). However, the record cited by Petitioner does not support this allegation, but is capable of quite the opposite meaning.[4] (30 RR at 149-50.) Petitioner's allegations are not clearly supported by the record and are not sufficient to undermine the state court findings and conclusion. Accordingly, Petitioner's first claim for relief should be denied.

---

> Q. And when you first viewed the video, you couldn't tell who it was that was on the video, is that right?
>
> A. No, sir.

(30 RR at 23).

[4] Mitchell's testimony during cross examination includes the following exchange,

> Q. In fact, isn't it fair to say if you didn't already know Charles Nealy you really wouldn't be able to recognize that was him on that video, would you?
>
> A. Yes, sir.
>
> Q. You wouldn't be able to tell who it was?
>
> A. Well, yeah, I already know, because I already know that Charles was over there. And then the shirt.
>
> Q. But what I'm asking you, sir, if you hadn't already known who Charles Nealy was, you wouldn't be–if you hadn't known him in your whole live (sic), somebody showed you that, you wouldn't be able to say that was the person right now,
>
> (Objection and ruling overruling objection omitted.)
>
> Q. In other words, that video, it's hard to be able to tell who's on that video, isn't that right?
>
> A. No, sir.
>
> Q. No?
>
> A. No, sir.
>
> Q. Okay. If I told you I was on that video, would you be able to say I was or wasn't. Would you, sir? Would you be able to tell if I was on that video or not?
>
> A. I already know you ain't on it, you know.

(30 RR at 149-50.)

11

## B. *Insufficient Evidence of Future Dangerousness.*

In his third claim for relief, Petitioner contends that the Texas Court of Criminal Appeals erred in denying his contention that the evidence was insufficient to prove that Petitioner was a continuing threat to society. (Pet. at 35.) This claim also lacks merit.

In *Lewis v. Jeffers*, 497 U.S. 764, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990), the Supreme Court held that the "rational factfinder" standard in *Jackson* is the appropriate standard to apply in the federal habeas corpus review of the sufficiency of evidence to support an otherwise constitutionally-adequate aggravating circumstance forming the basis of a state death penalty. This is the standard to be applied in both pre-AEDPA and post-AEDPA cases. *See Martinez v. Johnson*, 255 F.3d 229, 243-44 (5th Cir. 2001). In applying this standard, the Texas Court of Criminal Appeals observed,

> In his fourth point of error, Nealy challenges the legal sufficiency of the evidence to support the jury's affirmative answer to the future dangerousness special issue. In assessing the evidence supporting future dangerousness, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found beyond a reasonable doubt a probability that Nealy would commit criminal acts of violence constituting a continuing threat to society. The facts of the offense alone can be sufficient to support an affirmative answer to the special issue.
>
> Nealy concedes that the State presented three extraneous aggravated robberies and an assault of a fellow inmate. But he contends that these offenses do not demonstrate a pattern of repeated criminal conduct supporting a finding of future dangerousness. He further claims that the facts of the crime do not warrant a death sentence because the single gunshot blast to the victim's chest did not cause him any physical pain or involve torture. He also says that he did not enter the store with the intent to kill; rather, he "panicked" when the victim did not cooperate. Finally, Nealy emphasizes his difficult childhood and his good deeds as mitigating in favor of a punishment less than death.
>
> But the evidence does not support Nealy's contentions. Nothing in the record indicates that Nealy did not have the intent to kill when he entered the store armed with a shotgun–particularly considering his statement to Memphis before the offense that he was "going to come back to get 'em." His bragging afterwards about the way

the Nealy's commit robberies indicates that Nealy was neither surprised nor remorseful about the killings. And there is no suggestion in the record that Nealy shot Jiten Bhakta because he refused to cooperate.

In addition, the State introduced evidence that in 1980 Nealy stole a car at gunpoint from a mother before the instant offense, he robbed the mother-and-son proprietors of a pawn shop and stole various firearms including shotguns. The following month, and one day before the capital murder, he posed as a customer and robbed a shoe-store clerk. Additionally, while incarcerated awaiting trial, Nealy joined two inmates in assaulting another inmate who suffered a broken jaw and several contusions. After the assaulted inmate testified against him at trial, Nealy shouted out in the courtroom, threatening the inmate and yelling obscenities. We find the evidence sufficient to support a finding of future dangerousness. Nealy's fourth point of error is overruled.

(Footnotes omitted) *Nealy*, No. 73,267, slip. op. at 7-9. Again, the Court of Criminal Appeal utilized the correct standard of review, and Petitioner has not shown that any factual determinations were incorrect by clear and convincing evidence, or that its ultimate resolution of this claim was in any way unreasonable. Therefore, Petitioner's third claim for relief should also be denied.

## X.
## CONCLUSION.

For each of the reasons set out above, each of the claims for relief should be overruled and the petition for writ of habeas corpus should be, in all things, denied.

## XI.
## RECOMMENDATION.

Petitioner has failed to make a substantial showing of the denial of a federal right. The state court adjudication on the merits neither resulted in a decision that was contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, nor resulted in a decision that was based on an unreasonable determination of the

13

facts in light of the evidence presented in the State court proceeding. Petitioner's petition for a writ of habeas corpus should be DENIED.

## XII.
## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT.

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

IT IS SO RECOMMENDED.

ENTERED this _11_ day of _April_, 2005.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE